UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

-vs-

RALPH FORTE,

Defendant
_____

DECISION AND ORDER

05-CR-6066 CJS
08-CV-6398 CJS

APPEARANCES

For Defendant:        Ralph Forte, *Pro se*
                      14573-055
                      McKean Federal Correctional Institution
                      P.O. Box 8000
                      Bradford, Pennsylvania 16701

For the United States: Robert Marangola, Esq.
                       Assistant United States Attorney
                       100 State Street, Room 620
                       Rochester, New York 14614

INTRODUCTION

Now before the Court is Ralph Forte's ("Defendant" or "Forte") *pro se* application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the application is denied.

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The Court may dismiss a section 2255 petition without conducting a

1

hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255. In other cases, "[a] district court has a wide variety of tools available to it in developing the record during habeas proceedings." *Pham v. United States*, 317 F.3d 178,180 (2d Cir. 2003). Specifically,

> [i]t is within the district court's discretion to determine whether a hearing is warranted. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories. After expanding the record, the district court then decides if an evidentiary hearing also is required. Our precedent disapproves of summary dismissal of petitions where factual issues exist, but it permits a 'middle road' of deciding disputed facts on the basis of written submissions.

*Id*. at 184 (citations omitted). On this motion the Court did not conduct a hearing to take oral testimony, since, as discussed further below, the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## BACKGROUND

The facts of this case were accurately set forth in the Government's briefs, and in other documents in the record, as follows:

> On May 3, 2005, a federal grand jury returned a one-count Indictment against the defendant, Ralph Forte (hereinafter "Forte"), which charged a violation of Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm).[1] On May 11, 2006, Forte appeared before the District Court and pled guilty pursuant to a written plea agreement with the government.[2] The parties disagreed whether a previous conviction of Forte's constituted a "violent felony" under Title 18, United States Code, Section 924(e). If applicable, Forte would have been subject to an enhanced penalty of a minimum term of imprisonment of 15 years and a maximum term of life. If not, the maximum sentence would have been 10 years imprisonment.

---

[1] Defendant admitted that he possessed a .22 caliber rifle loaded with four rounds of ammunition: "I took it over to my nephew's house because he was over there arguing with some guys, some gangs and stuff, so I just took it over there." Plea Transcript [#50-2] at 30. Police arrived on the scene and arrested Defendant after receiving a report of a group of men arguing and one man, Defendant, waving what appeared to the witness to be a shotgun.

[2] Defendant pled guilty on the eve of trial, which was scheduled to begin on May 15, 2006.

While Forte acknowledged in the plea that he had three previous convictions, it was his position that a conviction for Criminal Contempt in the First Degree did not constitute a violent felony. The government's position was that it was a violent felony under the terms of 18 U.S.C. § 924(e). If the Court determined that the conviction was a violent felony, the parties agreed that Forte's base offense level was 33 pursuant to U.S.S.G. §4b1.4(b)(3)(B)(Armed Career Criminal). If it were determined that the offense was not a violent felony, the base offense level was 24 pursuant to §2K2.1(a)(2), and a two-level upward adjustment would apply pursuant to §3C1.1 (obstruction of justice)[3], for an offense level of 26. The government agreed not to oppose a two-level downward departure for acceptance of responsibility pursuant to §3E1.1(a), for a total offense level of 31 with the enhanced penalties, and 24 without. The parties agreed that Forte's criminal history category was VI[, the highest possible].

The parties further agreed that if the Court determined that Forte was subject to the enhanced penalties, the sentencing range would be 188 to 235 months based on an offense level of 31 and a criminal history category of VI. If that range applied, the parties agreed to a sentence of 180 months pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The parties further agreed that, pursuant to §5G1.3(c), the Court retained the discretion to order the sentence run concurrently with an unexpired term of Parole that Forte was serving.

The parties agreed that if the Court determined that Forte was not subject to the enhanced penalties, the sentencing range would be 100 to 120 months based on an offense level of 24 and a criminal history category of VI. If that range applied, the parties agreed to a sentence within the range of 100 to 120 months pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

Subsequently, Forte agreed as part of the plea deal that he would neither appeal nor collaterally attack any sentence which was the same or less than either of the sentencing ranges set forth in the plea agreement.[4] However, Forte did reserve his right to appeal a determination by the Court that he was subject to the enhanced penalties under 18 U.S.C. § 924(e).

The plea agreement was executed in open court following an extensive plea colloquy. During the course of the plea colloquy, the Court carefully reviewed the salient terms of the agreement. The Court confirmed that Forte was informed of the charges, agreed to the facts that supported the charges, fully

---

[3]Defendant induced his wife to lie for him. *See*, Sentencing Transcript [#50-3] at 31.

[4]*See*, Plea Agreement [#50-1] at ¶ ¶ 24-26.

3

> understood the material terms of the agreement and the consequences of pleading guilty, and that he not been coerced in any way into entering the plea. Moreover, the Court took great lengths to confirm Forte's understanding that the government was maintaining the enhance penalties applied, and that the Court would ultimately make that decision. Further, the court confirmed Forte was satisfied with the representation provided by defense counsel.

Government's Memo of Law [#50] at 1-4 (citing to plea agreement [#50-1] and plea colloquy [#50-2], specific citations omitted).

Significantly, during the plea the Court explained to Defendant that if the Court found that his criminal contempt conviction was not a violent felony, he would be facing a recommended advisory guideline sentence of 100 to 120 months, with 120 months being the maximum that he could receive even if he was convicted after trial:

> THE COURT: If that is the case, paragraph 18 comes into play because you and the government are agreeing that the appropriate period of incarceration you should get is indeed 100 to 120 months. *Now, the most I could give you anyway is ten years under the statute;* but essentially, you're agreeing that the period is 100 to 120 months. *But I want you to know that if you're right [that the criminal contempt conviction is not a violent felony], the most I could give you in any event is 10 years under the statute; do you understand that?*
>
> THE DEFENDANT: Yes.

Plea Transcript [#50-2] at 16-17 (emphasis added). Defendant also acknowledged elsewhere in the plea colloquy ([#50-2] at 7), and in the written plea agreement ([50-1] at 1), that the maximum prison sentence that he faced if convicted was ten years. However, Defendant hoped that at sentencing he could persuade the Court to sentence him to something lower than 120 months.

> On May 11, 2007, the government filed a Statement of the Government With Respect to Sentencing Factors and Sentencing Memorandum in which it argued that Forte's prior conviction for Criminal Contempt in the First Degree qualified as a violent felony under 18 U.S.C. § 924(e), thereby subjecting Forte to the enhanced penalties. On July 10, 2007, Forte filed a Sentencing Statement and Response to Government's Objections arguing that the

4

> Criminal Contempt conviction did not qualify as a "violent felony" and therefore, Forte should not be subject to the enhanced penalties. On July 19, 2007, Forte appeared before the District Court for sentencing, at which time the Court made the finding that Forte's prior conviction for Criminal Contempt did not qualify as a violent felony under 18 U.S.C. § 924(e), and declined to sentence him as an Armed Career Criminal. Pursuant to the Rule 11(c)(1)(C) plea agreement, the Court sentenced Forte to a 120-month term of imprisonment, three years of supervised release, a $500 fine and a $100 special assessment.
>
> On August 2, 2007, Forte filed a Notice of Appeal [Court of Appeals Docket No. 07-3338-cr]. On October 30, 2007, defense counsel filed an *Anders* brief arguing no nonfrivolous issues could be raised on appeal; that Forte waived his right to appeal in the plea agreement, that Forte's sentence was reasonable, and that there would be adverse consequences if Forte contested the plea. On December 18, 2007, the government filed a Motion for Summary Affirmance. The Second Circuit granted the government's motion on February 29, 2008, and issued a Mandate on April 2, 2008.

Government's Memo of Law [#50] at 4-6.

"On August 29, 2008, Forte filed the instant motion pursuant to 28 U.S.C. § 2255 arguing that defense counsel was ineffective for not advising him to reject the plea and stand trial." Government's Memo of Law [#50] at 4-6. Specifically, in the subject § 2255 motion, Defendant contends that his attorney, Mark Hosken ("Hosken"), Assistant Federal Public Defender,

> should have advised [Defendant] to reject the plea and stand trial, since there was no benefit to the Petitioner in accepting the plea. The plea agreement called for a sentencing range between 100-120 months. However, because the obstruction of justice enhancement was required under the plea agreement, it was obvious that the Petitioner was going to be sentenced to 120 months. Had counsel advised [Defendant] to stand trial the maximum sentence the Court could have imposed on Petitioner was 120 months.

Def. Memo of Law [#48] at 7; *see also, id*. at 8 ("Had counsel correctly and adequately informed [Defendant] that there was no benefit in taking the plea, because in either situation he would have received 120 months, [Defendant] would have insisted on going to trial.").

5

DISCUSSION

The legal principles applicable to Petitioner's motion collaterally attacking his sentence are well-settled:

> A defendant's waiver of his right to collaterally attack his sentence under section 2255 is enforceable so long as the waiver is both 'knowing and voluntary.' To be knowing, the defendant must fully understand the potential consequences of his waiver.[5] The Second Circuit has consistently recognized the benefits to both defendants and the Government in upholding plea agreements. While the defendant gains limited exposure at sentencing, the Government expends fewer resources. The benefit of the bargain is lost when a defendant can nonetheless collaterally attack his sentence.
>
> An enforceable section 2255 waiver bars claims based on grounds that arose after, as well as before, a plea agreement is signed. However, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured.

*Antonucci v. U.S.*, Nos. 08 Civ. 529(SAS), 04 CR 828(SAS), 2009 WL 185996 at *3 (S.D.N.Y. Jan. 26, 2009) (footnotes and internal quotation marks omitted); *see also*, *Parisi v. U.S.*, 529 F.3d 134, 138 (2d Cir. 2008) ("To raise a claim despite a[n] . . . appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards.") (citations and internal quotation marks omitted).

To establish ineffective assistance of counsel, a defendant must meet two requirements:

> First, he must demonstrate that his attorney's performance 'fell below an objective standard of reasonableness' under the 'prevailing professional

---

[5] *See, Pfeiffer v. U.S.*, Nos. 97-2343, 97-2468, 99-2755, 96-2603, 234 F.3d 1262, 2000 WL 1655232 at *2 (2d Cir. Nov. 3, 2000) ("We have held that waivers of the right to appeal or collaterally attack a sentence are enforceable as long as the waiver was made knowingly and voluntarily. A waiver is knowing and voluntary if the defendant actually does understand the significance and consequences of a particular decision and if the decision is uncoerced.") (citations and internal quotation marks omitted) (Unpublished).

norms.' *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must show a 'reasonable probability' that absent counsel's error, the outcome of the proceeding would have been different. *Id*. at 687-88.

*Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (footnote omitted). When applying the first *Strickland* prong, courts must be

mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts. To give appropriate deference to counsel's independent decisionmaking, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Another familiar risk is that, in the illuminating light of hindsight, we might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him. To counteract this inclination to evaluate counsel's performance against insight gained only through the passage of time, *Strickland* requires that "[w]hen assessing whether or not counsel's performance 'fell below an objective standard of reasonableness ... under prevailing professional norms,' " we must "consider the circumstances counsel faced at the time of the relevant conduct and ... evaluate the conduct from counsel's point of view." [*Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (*quoting Strickland*, 466 U.S. at 688-89, 104 S.Ct. 2052) (first ellipsis in original).

*Parisi v. U.S.*, 529 F.3d at 141.

Here, the Court finds that the subject motion must be denied because Defendant knowingly and voluntarily waived his ability to collaterally attack his conviction and sentence. Defendant has not shown otherwise.[6] Defendant agreed to waive his right to appeal or collaterally attack his sentence, if he received a sentence in the range of 100-120 months. At the plea hearing, Defendant specifically stated that he understood all of the terms and conditions of the plea agreement, including the appeal/collateral attack waiver provision.

---

[6] At most, Defendant makes conclusory statements such as, "Counsel never advised me to the strength of the governments' case or the favorableness of going to trial as opposed to accepting the plea." Def. Reply [#51] at ¶ 2. However, that statement is contradicted by Defendant's sworn testimony during the plea hearing, in which he stated that Hosken had discussed with him the government's case against him and the evidence that would be presented at trial, and what might happen if he went to trial. Plea Transcript [#50-2] at 5-6.

7

Plea Transcript [#50-2] at 17. Since Defendant received a sentence of 120 months, he has waived the right to collaterally attack that sentence. The plea agreement, plea transcript, and the Court's observations of Defendant during the plea, establish that the plea was intelligent, knowing, and voluntary.

To the extent that Defendant contends that his plea was not knowing and voluntary due to ineffective assistance of counsel, such claim lacks merit. The premise of such claim is faulty, since he is incorrect in stating that he had nothing to gain by pleading guilty. It is true that in hindsight, and due to his extensive criminal record,[7] which included crimes committed while on probation and parole, he ultimately received a sentence of 120 months, which was the statutory maximum that he could have received after trial. However, he could have received a sentence as low as 100 months. Defendant is therefore incorrect in stating, in his motion, that he was required to receive a sentence of 120 months under the terms of the plea agreement. By pleading guilty and receiving a two-point reduction for acceptance of responsibility, Defendant's sentence range under the advisory guidelines was reduced to 100-120 months. Without receiving such reduction for acceptance of responsibility, if convicted at trial Defendant's recommended sentence under the advisory guidelines would have been 120 months. Consequently, by pleading guilty Defendant potentially could have received a sentence that was twenty months shorter than if he had been convicted at trial. There is no indication that Hosken was ineffective in advising Defendant whether to plead guilty.

---

[7]At sentencing, the Court stated to Defendant: "So it is fair to say, even at age 38, your involvement with the criminal justice system, to say it is significant is an understatement." Sentencing Transcript [#50-3] at 29.

CONCLUSION

For the foregoing reasons, Defendant's application under 28 U.S.C. § 2555 [#48] is denied. The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated: Rochester, New York
February 1, 2011

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge